**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PAMELA J. FOLLEN, | CASE NO. 5:24-CV-01719-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## INTRODUCTION

This matter is before me on remand following the Sixth Circuit Court of Appeals' decision in *Follen v. Comm'r of Soc. Sec.*, 167 F.4th 352 (6th Cir. 2026). The parties previously consented to my exercising jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #9).

Plaintiff Pamela Follen seeks to overturn the Commissioner of Social Security's decision denying her claim for disability insurance benefits (DIB). (ECF #1). Jurisdiction exists under 42 U.S.C. §§ 1383(c) and 405(g). For the reasons below, I **REVERSE** the Commissioner's decision and **REMAND** the matter for the Agency to consider the unresolved factual issues identified in this decision.

## PROCEDURAL BACKGROUND

Ms. Follen applied for DIB on September 1, 2022, alleging she became disabled on March 8, 2020. (Tr. 168-69). After the claim was denied initially and on reconsideration, Ms. Follen requested a hearing before an Administrative Law Judge. (Tr. 72-90, 101-02). In November 2023,

1

Ms. Follen (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 33-71). On December 7, 2023, the ALJ determined Ms. Follen was not disabled. (Tr. 15-32). On September 5, 2024, the Appeals Council denied her request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 404.981). Ms. Follen timely filed this action. (ECF #1).

In her initial Brief on the Merits, Ms. Follen argued the ALJ erred at Step Five in finding she can perform other unskilled occupations under the ALJ's residual functional capacity (RFC) assessment and requested the Court reverse the Commissioner's decision and remand for an award of benefits. (ECF #10 at PageID 991). The Commissioner agreed remand is proper but opposed the request for an immediate award of benefits because there were unresolved factual issues related to the ALJ's evaluation of the persuasiveness of the opinion evidence and prior administrative medical findings. (ECF #12 at PageID 1000, 1002). I granted the Commissioner's motion to remand under Sentence Four of § 405(g) and dismissed the case. (ECF #14). Ms. Follen appealed that decision to the Sixth Circuit, which concluded my remand decision did not include the proper findings. (ECF #15, 16). It therefore sent the case back to me for further proceedings. (ECF #16). Both the Commissioner and Ms. Follen filed additional briefs addressing the issues before me on remand. (ECF #23, 24).

FACTUAL BACKGROUND[1]

At the administrative hearing, the VE opined an individual subject to the restrictions ultimately assessed in the RFC, including a restriction to occasional interaction with others, could

---

[1] Addressed below, Ms. Follen does not argue the ALJ erred in evaluating her RFC or claim the RFC is unsupported by substantial evidence. Instead, she argues narrowly that the ALJ

2

perform three unskilled positions: merchandise marker, routing clerk, and cleaner/housekeeper.

(Tr. 65). On cross-examination, Ms. Follen's counsel questioned the VE about training periods:

> Q. Let's go back to this new hiring, the beginning of work. Typically, what do you see for the training period for individuals in these unskilled occupations?
>
> A. The SCT[2] lends itself up to a month. However, in unskilled occupations I would say two to three weeks max for training.
>
> Q. Okay, during that time, would you agree that they're going to have more than occasional contact with either the supervisor or the coworkers for that training purpose?
>
> A. Yes.

(Tr. 68).

In a post-hearing brief to the ALJ, Ms. Follen argued the VE's testimony proves that contact with coworkers and supervisors during the training period exceeds the limits imposed under the ALJ's RFC, entitling her to a finding of disability. (Tr. 250). The ALJ rejected Ms. Follen's argument, and found her not disabled, stating:

> This argument is not well-taken, as the claimant's ability to sustain work activity which involves occasional interactions with others contemplates interactions with others up to one-third of a workday. As acknowledged in the argument, any probationary period is temporary, and would not be sustained by an individual for an indefinite duration. Furthermore, the representative occupations are unskilled jobs which can be learned in fewer than 30 days.

(Tr. 28) (citation omitted).

---

erred in finding she can perform other work and should have granted benefits based on the VE's testimony. For that reason, I do not summarize the medical evidence underlying her claim.

[2] This reference was not explained during the VE's testimony. I interpret it as a typographical error, which should have read "SCO" – the Department of Labor's *Selected Characteristics of Occupations* that is contained in the *Dictionary of Occupational Titles. See Shaulis v. Comm'r of Soc. Sec.*, No. 2:18-cv-1266, 2019 WL 3773769, at *5 (S.D. Ohio Aug. 12, 2019).

3

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520— to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this sequential analysis, the claimant has the burden of proof through Step Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. § 404.1520(c)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Follen's work after the alleged onset date of March 8, 2020, did not amount to substantial gainful activity. (Tr. 20). At Step Two, the ALJ identified six severe impairments: (1) essential hypertension; (2) degenerative disc disease of the lumbar spine; (3) degenerative joint disease of the left knee; (4) depressive disorder; (5) borderline personality disorder; and (6) substance-induced mood disorder. (*Id.*). At Step Three, the ALJ found Ms. Follen's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 21-22). At Step Four, the ALJ determined Ms. Follen's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; and she can only occasionally operate a motor vehicle; or be exposed to unprotected heights, or moving mechanical parts. She is able to perform simple, routine and repetitive tasks and make simple work-related decisions; she can interact with coworkers, supervisors, or the public occasionally; and she can tolerate few changes in a routine work setting.

(Tr. 22-23). The ALJ found Ms. Follen cannot perform her past relevant work as a server or automobile salesperson. (Tr. 27). At Step Five, the ALJ found Ms. Follen could perform other work, including as a merchandise marker, routing clerk, and cleaner/housekeeper. (Tr. 28). Thus, the ALJ concluded Ms. Follen was not disabled. (*Id.*).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833

(6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

If the ALJ's non-disability finding is not supported by substantial evidence, the Court must determine whether to reverse and remand the matter for additional proceedings or to reverse and order an award of benefits. Under 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *See also Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, the Court may reverse the Commissioner's decision and order an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

### DISCUSSION

Ms. Follen argues the ALJ erred in finding her not disabled at Step Five because the VE's testimony shows there are no occupations available to her under the ALJ's RFC. (ECF #10 at PageID 991). Ms. Follen also argues that all essential factual issues have been resolved and the record adequately establishes she is entitled to benefits, so the Court should reverse the Commissioner's decision and remand for an award of benefits. (ECF #10 at PageID 996). The Commissioner counters the ALJ did not err at Step Five and Ms. Follen is not entitled to an immediate award of benefits even if the Court finds the ALJ erred. (ECF #23 at PageID 1040-41).

**I.     The ALJ erred at Step Five.**

Here, the ALJ determined Ms. Follen could have no more than occasional interaction with others. At the hearing, the VE testified that an individual subject to the restrictions the ALJ ultimately included in the RFC can perform work in three unskilled positions: merchandise marker, routing clerk, and cleaner/housekeeper. (Tr. 65). On cross-examination, the VE testified that employees in unskilled occupations are trained for two to three weeks, during which they have more than occasional interaction with supervisors and coworkers. (Tr. 68). The ALJ relied on the VE's testimony that a claimant subject to the restrictions identified in the RFC could perform work as a merchandise marker, routing clerk, and cleaner/housekeeper to support his conclusion that Ms. Follen can perform other work. (Tr. 28) ("Pursuant to [Social Security Ruling (SSR)] 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles [DOT].").

But the VE was never asked whether the hypothetical individual could make it through the training period of the identified jobs given the heightened contact with supervisors and coworkers that would occur during that period. *See Kenneth P. v. Saul*, No. 4:19-cv-59, 2019 WL 6463449, at *6 (S.D. Ind. Dec. 2, 2019) (reversing ALJ's decision based on error at Step Five because "absent from the VE's testimony is any explicit reconsideration of the hypothetical claimant's ability to perform the representative jobs after the issues of instruction and the probationary period were raised"). Addressing Ms. Follen's post-hearing argument that the training period requires more than occasional interaction, the ALJ asserted the occupations do not require more than occasional interaction and the training period for unskilled jobs is less than thirty days. (Tr. 28). In other words, the training period is of no consequence to his decision.

7

At Step Five, the Commissioner's finding that the claimant can perform other work in the national economy must be "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citation omitted). And "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

The ALJ's conclusion at Step Five is not supported by substantial evidence because it ignores the conflict between Ms. Follen's limitation to occasional interaction with others and the VE's testimony that unskilled occupations require a two-to-three-week training period during which she would have more than occasional interaction interactions with coworkers and supervisors. Though the VE did not testify that a hypothetical individual subject to that limitation could not complete the training period or would be precluded from work if the individual could not complete it, the VE's testimony that a training period typically involves more frequent interaction with others than actually performing the job, the conflict remains. "The ability to complete a training period or probationary period is . . . tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity." *Loy v. Comm'r of Soc. Sec.,* No. 5:24-cv-2239, 2025 WL 2611407, at *6 (N.D. Ohio Sept. 10, 2025) (quotation omitted), *report and recommendation adopted,* 2025 WL 3229608 (N.D. Ohio Nov. 18, 2025).

This conclusion is consistent with other persuasive decisions recognizing an ALJ reversibly errs by not reconciling a finding that a claimant can work in the national economy with a VE's

testimony that the requirements to complete training or probationary periods exceed the limits of the individual's abilities in the RFC. *McAfee v. Comm'r of Soc. Sec.*, No. 3:19-cv-125, 2020 WL 5810004, at *4 (S.D. Ohio Sept. 30, 2020) (finding substantial evidence did not support the ALJ's decision where the VE testified plaintiff's RFC precluded completing the probationary period); *Otto v. Saul*, No. 3:20-cv-60, 2021 WL 1115351, at *6 (S.D. Ohio Mar. 24, 2021); *Bernard L. v. Saul*, No. 19-cv-1223, 2020 WL 7027637, at *5 (N.D. Ill. Nov. 30, 2020) (finding ALJ erred when she did not resolve the conflict between her finding that the plaintiff's RFC enabled him to work and the VE's testimony that one of plaintiff's limitations jeopardized his ability to complete a job's training period).

The Commissioner acknowledges the RFC limits Ms. Follen to occasional interaction with others but asserts the ALJ sufficiently explained "that finding did not mean Plaintiff could not handle some additional interactions during the short initial period." (ECF #23 at PageID 1042). In support, the Commissioner cites the ALJ's finding that "the longitudinal record supports that the claimant interacts more than infrequently in her present work at the flea markets." (*Id.*). Put another way, the Commissioner contends the ALJ determined Ms. Follen can interact with others occasionally but can interact with others more frequently during the training period. The Commissioner's argument is not persuasive.

The ALJ's observation that Ms. Follen interacted with others "more than infrequently" arose in his evaluation of the state agency consultants' prior administrative findings and opinions. There, the ALJ determined the state agency opinions that Ms. Follen can interact with others just "infrequently" were not persuasive. (Tr. 26). The ALJ then determined the record showed Ms. Follen interacted with others "more than infrequently" during her work at the flea markets and,

on that basis, discounted the state agency opinions and determined Ms. Follen can occasionally interact with others. In other words, the record evidence showing she interacted with others more than infrequently justified a limitation to occasional interaction with others. (*Id.*).

The RFC is "the most [an individual] can still do despite [her] limitations. 20 C.F.R. § 404.1545. The ALJ expressly determined Ms. Follen can, at most, interact occasionally with others and gave no indication that Ms. Follen can interact with others more frequently to complete the training period. In light of the record, I conclude the Commissioner has not met its burden at Step Five to show Ms. Follen can perform other work in the national economy. The decision of the Commissioner must therefore be reversed.

**II.    Remand for consideration of the unresolved vocational issues is the appropriate remedy.**

Having found the ALJ committed reversible error at Step Five, I now must decide whether to remand the case for further proceedings or for an award of benefits. Ms. Follen argues the matter should be remanded with instructions to grant benefits. (ECF #10, 24). A district court may remand the case and order benefits be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176.

The Sixth Circuit has not addressed this vocational issue and district courts have reached different conclusions. Some courts addressing the same vocational issue raised here chose to remand the case for an award of benefits. In *McLaughlin v. Comm'r of Soc. Sec.*, No. 3:17-cv-424, 2019 WL 125761 (S.D. Ohio Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1902749 (S.D. Ohio Apr. 29, 2019), the ALJ determined the plaintiff was limited to occasional interaction with supervisors and coworkers and could not perform duties involving teamwork or shared tasks.

*Id.* at *3. On cross-examination, the VE testified a person who could not engage in teamwork or shared tasks could not "weather the probationary period" of the unskilled jobs the VE identified. *Id.* The court found "no 'unresolved inconsistencies' between the VE's testimony and the RFC and, because an individual with Plaintiff's RFC could not perform jobs that exist in the national economy, the 'record adequately establishes Plaintiff's entitlement to benefits.'" *Id.* (citing *Faucher*, 17 F.3d at 176).

Similarly, in *Otto*, the ALJ determined the claimant's RFC (including that the claimant could not perform work if subject to "over-the-shoulder supervision") and the VE identified three jobs were available in the national economy that such an individual could perform. 2021 WL 1115351, at *3. The VE then testified that to perform the jobs the VE identified, there would be some over-the-shoulder supervision during a probationary period, but not once the person had learned the job. *Id.* Finally, the VE testified a person who had no tolerance for over-the-shoulder supervision could not complete the required probationary period. *Id.* The court determined there were no factual inconsistencies to be resolved and the record adequately established the plaintiff's entitlement to benefits. *Id.* at *6.

And in *Matthew H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-241, 2022 WL 2255376 (S.D. Ohio June 23, 2022), the VE identified a number of unskilled jobs and testified those jobs would require 30 to 90 days of "at least some minimal over the shoulder supervision while the employee was learning to meet the demands of the job and learning the tasks of the job." *Id.* at *5. The court determined the VE's testimony established that "the jobs identified by the vocational expert would not be available to a claimant who, like Plaintiff, cannot be subjected to over the shoulder supervision," and remanded for an award of benefits. *Id.*

11

But other courts addressing the vocational issue raised here have remanded the case for further proceedings because there unresolved issues of fact remained. In *Bernard L.* , the court remanded because "the VE did not testify whether the jobs at issue were, in fact, entry-level or required a probationary period," thus creating an inconsistency that could be addressed on remand. 2020 WL 7027637, at \*6. The court distinguished that case from *McLaughlin,* noting that in *McLaughlin,* "the vocational expert testified unequivocally that a claimant with [the] plaintiff's limitations could not complete the training or probationary periods for the jobs at issue." *Id.* at \*7. The court said there was a "gap in the record" because the VE:

> [D]id not testify that *all* SVP 2 level jobs "require a 30-day training period." Rather, the VE testified that SVP 2 positions in general include a training period "up to 30 days." And while the VE testified that a limitation to only occasional interactions with supervisors and coworkers would preclude a claimant from working in an SVP 2 position that included a thirty-day training period, she did not testify whether that limitation would likewise preclude working in an SVP 2 position with a shorter training period. Nor, finally, did the VE testify about the length of training periods for the small parts assembler, label coder, and housekeeping cleaner positions.

*Id.* at \*6 (cleaned up).

Similarly, in *Bassett v. Comm'r of Soc. Sec.*, No. 5:24-cv-1600, 2025 WL 798791 (N.D. Ohio Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 1068013 (N.D. Ohio Apr. 9, 2025), the VE agreed the claimant "would be having more than occasional contact with supervisors while they're being trained," but the claimant's counsel did not ask the VE if a person with those limitations could "weather the probationary period" (or language to that effect) of the three identified jobs. *Id.* at \*6. Because it was unclear whether the VE's testimony applied specifically to the three jobs identified for the claimant and the claimant's attorney did not confirm whether this would preclude the claimant from performing the identified jobs, the court concluded those gaps

in the record warranted remand for the ALJ's further consideration. *Id.* at \*8. Importantly, none of

those opinions are binding on this court and serve only as persuasive authority.

I find that remand for further proceedings rather than an award of benefits is appropriate.

In this case, responding to counsel's question about what a "typical" training period for "these

unskilled occupations" looks like, the VE stated that training for unskilled occupations generally

lasts "two-to-three weeks max." (Tr. 68). This suggests the possibility of shorter training periods for

different unskilled occupations. But the VE did not testify whether the particular jobs she

identified (merchandise marker, routing clerk, cleaner/housekeeper) have required training

periods, if their training periods are shorter than the general "two to three weeks max," or, most

critically, if a person limited to occasional interactions with others could make it through those

training periods. If, on remand, the ALJ finds that some of the jobs the VE identified do not have

a training period, the Commissioner may be correct in claiming there are a significant number of

jobs in the national economy that Ms. Follen can perform. *See, e.g., Sczepanski v. Saul*, 946 F.3d

152, 162 (2d Cir. 2020) (finding error in ALJ's refusal to consider effect of probationary period

but declining to award benefits because "[i]f the Commissioner can show on remand that even a

fraction of the 3 million jobs identified by the VE do not have probationary periods (or permit

absences during their probationary periods), then the Commissioner may be able to show that

there are significant numbers of jobs in the national economy [the claimant] can perform"). Unlike

*McLaughlin*, *Otto*, and *Matthew H.*, where the VE testified unequivocally that an individual with

those claimants' limitations could not complete the training or probationary periods for the jobs

the VEs identified, the record here does not definitively establish that Ms. Follen's RFC precludes

13

her from performing the three unskilled positions identified by the ALJ at Step Five. That is a factual issue for the ALJ to resolve.

CONCLUSION

For the reasons explained above, I **REVERSE** the Commissioner of Social Security's decision and **REMAND** the case under Sentence Four of **§** 405(g) with instructions that on remand, the Agency is to consider the unresolved vocational issues regarding training periods outlined in this decision.

Dated: May 18, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE